UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BURNELL JOSEPH

VERSUS

ATALCO GRAMERCY, LLC, ET AL.

CIVIL ACTION

23-CV-505-SDD-SDJ

**RULING**

Before the Court is the *Motion to Dismiss for Lack of Personal Jurisdiction*,[1] filed by Defendant, Velan, Inc. ("Velan" or "Defendant"). Plaintiff, Burnell Joseph ("Joseph" or "Plaintiff") filed an *Opposition*,[2] to which Velan filed a *Reply*.[3] For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

Plaintiff was employed as a precipitation batch tank operator by Atalco.[4] This case arises out of an injury Plaintiff claims he suffered at work while servicing a tank. This tank contains two valves, a fill valve and a charge valve. There is also a nozzle that connects to the tank. When this tank needs to be cleaned, it is removed from service, and a caustic soda liquor material that is superheated flows through the nozzle and into the tank for cleaning.[5] Once the tank was cleaned, Plaintiff was tasked with returning the tank to service. He was also tasked with confirming that the valves were closed.[6] After Plaintiff confirmed the tank was empty and the valves were closed, the tank's fill pumps were

---

[1] Rec. Doc. 22.
[2] Rec. Doc. 27.
[3] Rec. Doc. 33.
[4] Rec. Doc. 1-3, p. 4.
[5] *Id.* at pp. 4–5.
[6] *Id.* at p. 4.

activated. Once activated, the lines carrying the hot liquor to the tank "bec[o]me pressurized."[7] But, the closed valves should restrict the hot liquor from entering the tank. However, Plaintiff claims that, because of the "failure of the fill valve and/or actuator" on this tank, hot liquor flowed and entered into it.[8] Consequently, when Plaintiff was attempting to remove a nozzle from what he thought was an empty tank, extremely hot liquor sprayed om Plaintiff's face and body.[9] Plaintiff claims he sustained severe and permanent bodily injuries, including severe burns and loss of vision in both eyes.[10]

Plaintiff claims Atalco ordered and purchased the fill valve from MRC Global, one of eleven Velan "authorized distributers" in Louisiana.[11] Plaintiff alleges that Velan solely or in contribution with others, "designed, manufactured, constructed, supplied, rebuilt, repaired, and/or tested the fill valve" at issue and provided training on the fill valve's operation.[12] Plaintiff brings suit against Velan for negligence in manufacturing the fill valve and in training provided on operating and maintaining the fill valve.[13] Plaintiff claims the fill valve Velan manufactured was unreasonably dangerous and brings suit pursuant to the Louisiana Products Liability Act (the "LPLA").[14] Velan now moves to dismiss Plaintiff's claims for lack of personal jurisdiction.

## II.   LAW AND ANALYSIS

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state enables

---

[7] *Id.* at p. 5.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at p. 7.
[12] *Id.*
[13] *Id.* at p. 8.
[14] *Id.* at p. 9; La. Rev. Stat. Ann. § 9:2800.56.

personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause. The due process and long-arm statute inquiries merge because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[15]

Personal jurisdiction may be divided into specific jurisdiction and general jurisdiction.[16] General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."[17] Except in exceptional circumstances, courts have general jurisdiction over a business only if the business is incorporated in or has its principal place of business in that forum state.[18]

A court may exercise specific jurisdiction in conformity with due process "in a suit arising out of or related to the defendant's contacts with the forum"[19] when the "'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[20] The Fifth Circuit follows a three-step analysis for specific jurisdiction. First, a court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[21] The "'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the

---

[15] *Petroleum Helicopters, Inc. v. Avco Corp.*, 834 F.2d 510, 512 (5th Cir.1987).
[16] *Alpine View Co. v. Atlas Copco, A.B.,* 205 F.3d 208, 215 (5th Cir. 2000).
[17] *Springboards to Educ., Inc. v. Hamilton Cnty. Read 20*, 2017 WL 3023489, at *2 (N.D. Tex. July 14, 2017) (quoting *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)).
[18] *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).
[19] *Luv N' Care, Ltd. v. Insta–Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[20] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo*., 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co*., 517 F.3d 235, 243 (5th Cir. 2008)).
[21] *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006).

forum state."[22] Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[23] Third, "[e]ven if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice."[24]

In *Walden v. Fiore*,[25] the Supreme Court reiterated that, "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[26] The relationship between the defendant and forum State "must arise out of contacts that the 'defendant *himself*' creates with the forum State."[27] The due process limits of personal jurisdiction exist "principally [to] protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."[28] Further, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[29] Finally, "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the 'random, fortuitous or attenuated' contacts he makes by interacting with other persons affiliated with the State."[30]

---

[22] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. . .or of the 'unilateral activity of another party or a third person'. . . .") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[23] *Seiferth*, 472 F.3d at 271.
[24] *Ruston Gas Turbines*, 9 F.3d at 421 (internal citations and quotation marks omitted).
[25] 571 U.S. 277 (2014).
[26] *Id*. at 284.
[27] *Id.* (emphasis added in the original).
[28] *Id*.
[29] *Id*. at 285.
[30] *Id*. at 286 (quoting *Burger King,* 471 U.S. at 475).

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident."[31] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[32] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[33] To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[34] When deciding a motion to dismiss for lack of personal jurisdiction, the court is not limited to considering the facts pleaded in the complaint.[35]

The Court finds that it lacks general jurisdiction over Velan. Velan is not incorporated in Louisiana and does not maintain its principal place of business here. Indeed, in its Opposition,[36] Plaintiff only argues in favor of specific jurisdiction. Thus, Plaintiff must prove specific jurisdiction or face dismissal.

---

[31] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[32] *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995).
[33] *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).
[34] *Walk Haydel & Assocs., Inc.,* 517 F.3d at 241–42 (holding that the district court erred in requiring a plaintiff to establish more than a *prima facie* case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[35] See *id* (explaining that a court may consider affidavits, interrogatories, depositions, or other recognized discovery materials in addition to holding a pretrial evidentiary hearing). The Court will consider the Purchase Order and the Corporate Disclosure exhibits attached to Plaintiff's Opposition. Rec. Docs. 27-1 and 27-2. However, the Court will not consider the remaining exhibits because these documents do not fall within one of the recognized forms of discovery that this Court may review when deciding on personal jurisdiction. Rec. Docs. 27-3, 27-4, 27-5, and 27-6.
[36] Rec. Doc. 27.

**A. Minium Contacts-Stream of Commerce**

Plaintiff argues the Court has personal jurisdiction over Velan under a stream of commerce theory. In cases involving a product sold or manufactured by a foreign defendant, the Fifth Circuit follows a stream of commerce approach to personal jurisdiction.[37] Under this approach, "the minimum contacts requirement is met so long as the Court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'"[38] "Under that test, 'mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce,'"[39] but "the defendant's contacts must be more than 'random, fortuitous, or attenuated or of the unilateral activity of another party or third person.'"[40]

Plaintiff argues that he has sufficiently alleged minimum contacts because Velan, through its multiple authorized dealers and service centers in Louisiana, has purposefully availed itself of the privileges of doing activities in this state.[41] Specifically, Plaintiff claims Velan has eleven "Velan Authorized Distributor" locations in Louisiana, three service centers in Louisiana to repair Velan-made products, and that Atalco purchased and ordered the valve at issue from an authorized distributor, MRC Global, in Louisiana.

Plaintiff relies on *In re Toyota Hybrid Brake Litigation* to support his argument. In this case, the Eastern District of Texas determined whether the court held personal jurisdiction over a foreign Toyota manufacturer, TMC, through its "network" of distributors

---

[37] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174,177 (5th Cir. 2013).
[38] *Id.* (citing *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987)).
[39] *Id.* (citing *Luv N' care, Ltd.,* 438 F.3d at 470).
[40] *Id.* (citing *ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. 2012)).
[41] Rec. Doc. 1-3, p. 8.

in Texas under the stream of commerce theory of specific jurisdiction.[42] The court held that it had jurisdiction over the manufacturer because under Fifth Circuit precedent, "jurisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties."[43] Thus, the fact that TMC sold its vehicles to an American distribution network prior to the vehicles reaching consumers did not immunize it from jurisdiction.[44]

Defendant counters this argument in three ways. First, Defendant argues *In re Toyota* lacks precedential value and analogous facts.[45] The Court disagrees with the latter point and is unpersuaded by the former. While this case does not hold precedential value, this Court considered it persuasive, especially under these circumstances, where it was decided by a district court within the Fifth Circuit, and the district court extensively relied on Fifth Circuit precedent to reach its conclusion. Moreover, and that which makes it heavily persuasive, the Court finds the facts *of In re Toyota* analogous to the facts at issue here. Plaintiff is alleging Velan—a foreign manufacturer—created a product which was ultimately sold in the forum state through Velan's Louisiana. The plaintiffs in *In re Toyota* argued nearly identical facts. Thus, Defendant's primary argument that this case should be distinguished because it involved a class action is unconvincing.[46] Second, Defendant asserts the following facts to show this Court cannot exercise specific jurisdiction:

- The Subject Valve would have been designed and manufactured in Canada;
- Velan Inc. did not sell the Subject Valve to MRC Global (US), Inc.;
- Velan Inc. did not sell the Subject Valve to ATALCO.
- Velan Inc. did not sell the Subject Valve to any person or company

---

[42] *In re Toyota Hybrid Brake Litig.,* 2021 WL 2805455, at *6 (E.D. Tex. July 6, 2021).
[43] *Id.* at *8.
[44] *Id.*
[45] Rec. Doc. 33, p. 3.
[46] *Id.*

- located in the State of Louisiana.
- Velan Inc. did not service or maintain the Subject Valve in the State of Louisiana or elsewhere;
- Velan Inc. did not provide ATALCO with training or any other services regarding the operation and/or maintenance of the Subject Valve; and
- Velan Inc. cannot specifically track the chain of distribution of the Subject Valve because it is not a serialized product. That said, based on Velan Inc.'s general business practices in 2020, Velan Inc. would have either sold the Subject Valve to Velan Valve Corporation located in Williston, Vermont or sent it to Velan Valve Corporation's facility in Texas. Once the Subject Valve was shipped from Québec, Canada to one of Velan Valve Corporation's locations, Velan Inc. would have no more involvement with the Subject Valve. Velan Inc. did not direct, control, or otherwise have any involvement regarding to whom Velan Valve Corporation would have sold the Subject Valve or to where it would have been shipped by them.[47]

Velan contends because Velan sold or sent the valve to one of the Velan Valve Corporation locations, exercising specific jurisdiction over Velan would be purely based on "the unilateral actions of Velan Valve Corporation in Vermont or Texas."[48] Defendant compares the facts here to *Meunier v. Home Depot USA, Inc.*, to support this argument. In that case, the plaintiff sustained injuries due to a defective trailer manufactured by MMDI after purchasing the trailer at Home Depot in Louisiana. The trailer at issue was manufactured in North Carolina and then sold to Compact Power Equipment, Inc. ("Compact Power"), another North Carolina Company. But three years after this sale to Compact Power, Home Depot acquired Compact Power.[49] The district court found that it could not exercise specific jurisdiction, reasoning that once MMDI sold the trailer to Compact Power, "the stream of commerce effectively ended absent any knowledge or expectation by MMDI that the trailer would be resold or used in Louisiana."[50]

---

[47] Rec. Doc. 22-2, pp. 8–9.
[48] *Id.* at p. 9.
[49] 2020 WL 6708379, at *1 (E.D. La. Nov. 16, 2020).
[50] *Id.* at *3.

The Court finds the facts plead here are distinguishable from *Meunier*. Here, Plaintiff alleges his former employer purchased the valve at issue from one of Velan's distributors, and Velan's website lists this distributor along with ten other "Velan authorized distributor" locations in Louisiana.[51] Taking these facts as true, unlike *Meunier*, a corporate relationship exists between the alleged manufacturer of the product at issue and the distributor/ultimate seller of the product. MMDI never had an established corporate relationship with Home Depot. Moreover, Defendant does not reject the allegation that MRC Global is a distributor for Velan, but instead states that it "cannot specifically track the chain of distribution," but based on prior business practices, the valve would have been sold or sent to Velan Valve Corporation in Vermont or Texas before being sold or sent to any other entity.[52] Not only does the Court have to consider controverted facts in the light most favorable to Plaintiff, but even if Plaintiff conceded these facts, this case remains distinguishable from *Meunier*. Velan concedes in its Reply that Velan Valve Corporation is a subsidiary of Velan,[53] so unlike *Meunier*, where there was a sale between two separate, foreign entities before the plaintiff purchased the defective product, in this case, the valve admittedly went to Velan subsidiary and then to an authorized Velan distributor in Louisiana.[54]

The Court finds that Plaintiff has sufficiently plead facts to show Velan purposefully

---

[51] Rec. Doc. 1-3, p. 7.
[52] Rec. Doc. 22-2, p. 9.
[53] Rec. Doc. 33, p. 5.
[54] *See Meunier,* 2020 WL 6708379, at *3 (explaining that the unilateral activity of those who claim some relationship with the nonresident defendant cannot satisfy the contacts requirements, but also citing to multiple cases involving a manufacturer selling its product to a completely separate company and/or entity as opposed to the manufacturer's subsidiaries).

availed itself of the privileges of conducting business in Louisiana.[55]

## B.  Relatedness of the Claim to Defendant's Contacts

For Plaintiff's cause of action to arise out of or result from Defendant's forum-related contacts, a nexus must exist between Velan's contacts with Louisiana and Plaintiff's negligence and LPLA claims.[56] As set forth above, Plaintiff claims he was injured at work by a Velan valve purchased by his employer from an authorized Velan distributor in Louisiana.[57] This allegation is sufficient to show a nexus between Plaintiff's claims and Velan's contacts with the state.

Accordingly, the Court concludes Velan has established sufficient minimum contacts with Louisiana to confer specific personal jurisdiction.

## C.  Traditional Notions of Fair Play and Substantial Justice

When a plaintiff makes his *prima facie* case that the nonresident defendant has minimum contacts with the forum state, the burden of proof shifts to the defendant to make a compelling case showing that exercise of jurisdiction would be unreasonable.[58] The Fifth Circuit has stated that "it is rare" for the assertion of jurisdiction to be "unfair after minimum contacts have been shown."[59] In reaching this conclusion, the Fifth Circuit relied on the Federal Circuit's reasoning that, where personal jurisdiction is otherwise constitutional, defeat of jurisdiction is limited to the rare scenarios in which the interests

---

[55] *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 293 (5th Cir. 2020) (holding that "[s]pecific juridiction should be determined on a case-by-case basis under the facts of each individual case" and declining to "prohibit[sic] the exercise of specific juridiction over all component parts manufacturers.").
[56] *ITL Int'l, Inc.*, 669 F.3d at 500 (finding that the second prong of the plaintiff's claim lacked because "there [was] little nexus between the defendants' contacts with Mississippi and the plaintiffs' contract and trademark claims").
[57] Rec. Doc. 1-3, pp. 5, 7–8.
[58] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King Corp.,* 471 U.S. at 477).
[59] *McFadin v. Gerber,* 587 F.3d 753, 759–60 (5th Cir. 2009) (quoting *Wien Air Alaska*, 195 F.3d at 215).

of the plaintiff and the forum state are so attenuated that they are "clearly outweighed by the burden of subjecting the defendant to litigation within the forum."[60] In determining whether the exercise of jurisdiction is fair and reasonable, the Court must examine five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[61]

### 1. Burden on Nonresident Defendant

First, the Court must look at the burden placed on the nonresident defendant. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal over national borders."[62] However, oftentimes the assertion of jurisdiction is found to be justified by the interest of the plaintiff and the forum in exercise of justice, even when it would seriously burden an alien defendant.[63]

Velan argues that exercising personal jurisdiction is unreasonable because it is not incorporated in, nor does it have its principal place of business in Louisiana.[64] Additionally, Velan argues it did not design, manufacture, sell, or ship the valve at issue to Louisiana.[65] The Court considers the location of Velan's incorporation and place of business; however, the remaining facts upon which Velan relies are in dispute. Thus, those disputed facts must be viewed in the light most favorable to Plaintiff. Notwithstanding this, the Court

---

[60] *Akro Corp v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995); *see also Wien Air Alaska*, 195 F.3d at 215 (citing *Akro*, 45 F.3d at 1549).
[61] *Luv N' care*, 438 F.3d at 473.
[62] *Asahi Metal Ind. Co., Ltd. V. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987).
[63] *Id.*
[64] Rec. Doc. 22-2, p. 12.
[65] *Id.*

finds this factor weighs against the exercise of personal jurisdiction.

Velan finds support from the Supreme Court's decision in *Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano Cty.*[66] In *Asahi*, the Supreme Court held that jurisdiction would be unreasonable due to the burden on the foreign defendant.[67] *Asahi* involved two foreign corporations who were in a dispute in a California court with absolutely no interest in the dispute.[68] In the instant case, Louisiana does have an interest in the dispute. Thus, *Asahi* is not directly controlling, but is applicable.

Plaintiff argues that, because Velan has not found it "too burdensome" to authorize several distributors and service centers in Louisiana, litigation is likewise not unduly burdensome.[69] While this is compelling, Plaintiff's additional arguments include allegations not plead in the Complaint nor substantiated by the exhibits attached to Plaintiff's Opposition, or they concern solely Velan's subsidiary.[70] The Court is not persuaded that these arguments dispose of the potential burden placed on Velan as a nonresident.

### 2. Forum State's Interest in Adjudicating the Dispute

The Court must next examine Louisiana's interest in adjudicating the dispute. The

---

[66] *Id.*
[67] *Asahi*, 480 U.S. at 116.
[68] *Id.*
[69] Rec. Doc. 27, p. 14.
[70] *Sheppard v. Cheeks,* 2020 WL 2301367, at *2 (W.D. La. Apr. 13, 2020), report and recommendation adopted, 2020 WL 2248134 (W.D. La. May 7, 2020), aff'd, 2022 WL 964202 (5th Cir. Mar. 30, 2022) ("The law is well-settled that arguments in a brief are not a substitute for properly plead allegations: 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'"). These allegations include: Velan's subsidiary being located "less than 300 miles from this courthouse" and Velan having a "Level 1 service center located in Baton Rouge, Louisiana—one of only three Level 1 Velan centers in the United States." Rec. Doc. 27, p. 14. Both of these allegations are not plead in the Complaint and are not supported by either of the exhibits the Court decided to consider. See *supra* note 35. The allegation that Velan Valve Corporation has litigated in Louisiana on "multiple occasions" does not impact whether Velan should have to litigate in this Court. See Rec. Doc. 27, p. 14. (citing Velan Valve Corporation's prior litigations in this Court).

Court certainly has an interest in adjudicating claims for injury to its residents. Plaintiff is a Louisiana resident and Velan concedes to this interest in its motion.[71] Therefore, this factor weighs in favor of exercising jurisdiction.

### 3. Plaintiff's Interest in Convenient and Effective Relief

Third, the Court must examine Plaintiff's interest in securing convenient and effective relief. Velan argues against jurisdiction because the witnesses and evidence that would be required for litigation are in Québec, Canada. Additionally, Velan argues many of the documents and/or testimony would be in the French language and require translation into English.[72] However, the Court agrees with Plaintiff's counterpoints. As the Plaintiff argues, because Plaintiff has alleged that a work injury took place in Louisiana and that his former employer purchased the valve in Louisiana, it is likely there are just as many witnesses and documents in Louisiana as in Québec.[73] Moreover, Defendant's argument with respect to translating testimony is unpersuasive. This Court is equipped and capable of utilizing translation aids in any case. Thus, this factor weighs in favor of exercising jurisdiction.

### 4. Interstate Judicial System's Interest in Obtaining an Efficient Resolution

Fourth, the Court must determine whether the forum state is the most efficient place to litigate the dispute. Defendant's only argument against this Court exercising jurisdiction is that, even if the claims against Velan are dismissed, Plaintiff can nonetheless achieve relief, "assuming [Plaintiff] proves his case against ATALCO."[74] This

---

[71] *See* Rec. Doc. 22-2, p. 12 ("Velan Inc. acknowledges that Louisiana has an interest in adjudicating claims for injury to its residents.").
[72] *Id.* at p. 13.
[73] Rec. Doc. 27, p. 15.
[74] Rec. Doc. 22-2, p. 13.

is not probative. Plaintiff has asserted negligence claims against Velan and Atalco; however, the nature of the allegations asserted against each defendant are different.[75] Moreover, Plaintiff has brought a claim against Velan pursuant to the LPLA,[76] which involves a distinct, separate analysis from general negligence claims in Louisiana. Therefore, the relief Plaintiff seeks from other defendants is not relevant to his potential relief against Velan. Accordingly, this factor weighs in favor of execising jurisdiction.

### 5. Comparing Louisiana's and Canada's Interest in Furthering Social Policies

Finally, the Court must "consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [Louisiana] court."[77] That being said, "'[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'"[78]

The Court finds this factor weighs in favor of exercising jurisdiction. First, Defendant's arguments are grounded in this Court finding Velan lacked contacts with Louisiana; as this Court has held otherwise, these arguments hold no weight. Second, Defendant's reliance on *Daimler Ag v. Bauman* to argue that jurisdiction goes against the interests of the United States is unconvincing. *Daimler Ag* involved "a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States."[79] The Supreme Court called exercising personal jurisdiction under those circumstances "so exorbitant" that it must be barred by due process constraints.[80]

---

[75] Plaintiff's claims against Atalco include failure to provide safe equipment for use, failure to supervise, and failure to maintain, service, and replace failed valves whereas Plaintiff has alleged that Velan was negligent in its manufacturing, repair, construction, and design of the valve at issue. Rec. Doc. 1-3.
[76] *Id.* at p. 9.
[77] *Asahi*, 480 U.S. at 115.
[78] *Id.* (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).
[79] *Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014).
[80] *Id.* at 121–122.

This is not the case here. Plaintiff has alleged the injury took place in Louisiana, the valve was purchased in Louisiana, and the only foreign party involved is Velan. Accordingly, the interest of Louisiana and Plaintiff's interest in adjudicating his claim in Louisiana outweighs any concern Velan purports to make through *Daimler Ag*.

The Court finds that the fair and reasonableness factors heavily weigh in favor of exercising jurisdiction. Therefore, the Court finds that it may exercise personal jurisdiction over Velan.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction[81] is hereby **DENIED.**

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on  22  this day, March, 2024.

*Shelly D. Dick*
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[81] Rec. Doc. 22.